Good morning. May it please the Court, my name is Eric Miller and I represent Appellant Airlines for America. In denying a motion for a preliminary injunction against the enforcement of the Port of Seattle's minimum wage rules, the District Court relied primarily on its legal conclusion that Appellant had failed to establish a likelihood of success on the merits, and that conclusion is erroneous for two reasons, either one of which would be a basis for reversal. The first is that under Washington law, the Port of Seattle lacks authority to enact and enforce third-party employment standards. And the second is that the standards that were enacted in this case, which directly target employees providing airline services, are preempted by the Airline Deregulation Act. Beginning with the state law question, it's common ground among the parties, I think, that there is no express grant of statutory authority in Washington law to the Port of Seattle to regulate third-party employment standards. So the question is whether that power can be inferred from any of the powers that the Court does have. And the Washington Court has made clear in a line of cases going back a hundred years and repeatedly... Well there's a case that's pending right now, B.F. Foods. Is the Washington Supreme Court going to decide this question, or if they're deciding a related question, provide sufficient guidance such that it answers the implied power question in our case? The question presented here is different from the question presented there. It's not squarely presented. But they are related, and it is certainly possible there will be guidance. And the Washington Attorney General, for example, has argued in that case that the Port of Seattle lacks state law authority to enact this. So maybe we should hold on this case and wait for that decision before we decide? I think that, in the exercise of this Court's discretion, that could well be an appropriate course. That case was argued... A year ago. Over a year ago now. Any indication as to when a ruling's going to come down on that? No, the decisions are issued on Thursdays, and it didn't come out this morning. So there's really no way for us to know. But it could be at any time, and I think there's... Want us to ask the Supreme Court to rule on this precise question, right? Yes. Part of the AG's reasoning was that the city should be found to have authority because the port does not have authority. So if the court were to adopt... Somebody has the authority, right? So the Washington Court should say who's got the authority. That's essentially the request? Right. I will say it's not certain that either the city or the port has authority. It could be that the authority resides only in the state legislature, and it wouldn't be surprising to learn that no... There are some matters with respect to which no local government has authority, but you don't need to decide that, and the state court may well provide guidance on that. There's no downside, in your view, to having us defer a submission and making a decision in our case, given that the ordinance wouldn't take effect until the Supreme Court rules and BF foods anyway? That's right. And of course, we are concerned about a prompt ruling. Once the Supreme Court rules, that will start the 45-day clock before these rules go into effect. But assuming that a decision can be reached before then, that there is no downside to waiting for the state Supreme Court to rule on that issue. Couldn't you also move to delay imposition beyond any changes beyond the 45 days, if this case were still pending? If you mean move in this court, we would be seeking an injunction pending. In some court, you could presumably seek an injunction, with this case pending, to... Yes. I mean, what we were told at the time, we were here because we sought an injunction from the district court, and that was denied. I mean, if you're talking about a more limited injunction, just till this... Or some kind of stay pending resolution of the appeal. That would certainly be appropriate, and we would welcome such a stay if the court chooses to take that course. If I could say just a few words about this on the state law, because it is of course possible that the state Supreme Court will not directly opine on this issue. All right, so let's get to your interpretation of implied powers. What the Washington Supreme Court has made clear in a long line of cases is that if there's any doubt as to whether an implied power exists, then the answer is that the power does not exist. So the regime under Washington law for municipal entities is quite different from the more familiar necessary and proper clause under the federal constitution, where there's a very deferential review of Congress's judgment, and the question is really just is there a basic rational connection between the ends and the means that Congress has chosen. Here, the test is one of strict legal necessity. The court in the chemical banks case said if the power isn't legally necessary, that is directly tied to a power that is expressly granted. But the language is pretty broad, allowing to adopt and amend all needed rules, regulations, and ordinances for the management, government, and use of any properties under its control. It reads like a pretty broad grant of power, doesn't it? Well, it does, except for those last words in the phrase that Your Honor read, which are critical, and that is government and use of airport properties. And one needs to read that, I think, in context, and when you look at it in conjunction with the rest of that provision and the other provisions that surround it, which are about leases, charging people for buying and selling property, it's all very narrowly tied to the government of property. But it's clear that they're using this property to run an airport, and you can't run an airport without employing people. So why isn't the idea that they are obviously going to run an airport and they have the power to do so, why doesn't that include setting rules for how you employ people? Well, they of course have the power to set rules for their own employees, and they do that. And they have power to set rules for what third-party employees do with airport property. And indeed, that's when you look at the rules that they've already enacted, most of them are of that nature. They're rules of the road for driving on the tarmac, rules that say that when you're fueling a plane, you have to have a fire extinguisher nearby. Those are all rules that regulate what people do with property that are there to protect... But if they think these other rules are something to promote safety, why isn't it like how you drive on the tarmac? Because the connection is just so attenuated that there's really... One of the devices, I think, in the port's interpretation is there is no limiting principle that would stop short of essentially a plenary grant of authority to enact social welfare legislation at the airport on the theory that if conditions are better at the airport, then things will be better for airport property. And that, under Washington law, is clearly not a permissible line of reasoning because, again, as the court has stressed, these powers need to be narrowly construed. Could I ask a different question here? So I don't see how you've shown irreparable harm. And if you don't have a showing of irreparable harm, I don't see how you can get an injunction. And I'm not sure why we need to say anything else in this case. Don't you just lose because you don't have irreparable harm and we don't have to get to any of these difficult legal questions on the merits? We do have irreparable harm. What is the irreparable harm? There are, I think, three kinds. One is, as this court has said, a constitutional injury which is a violation of the supremacy clause. So say we disagree that there is... Then the irreparable harm is when the rules go into effect, Airlines for America's members and its contract, or the airlines and the service providers with whom they contract, will have to raise wages and will be paying out higher wages. Now ordinarily, a monetary injury is not irreparable. And that's because ordinarily, if you win the case, you can recover what you paid to the defendant. But we're not paying the higher wages of employees. And even if there were some legal principle that would allow us to get recoupment from them as a practical matter, it would simply not be possible to recover the increased wages from these many thousands of employees. Have you shown that you couldn't somehow sue the court? If they make you pay this higher wage, you have these damages for having paid them. If you succeed ultimately in showing that that was improper, why can't you recover it from the court? Because the court has not identified, and we're not aware of any... Again, if we're talking about a state law violation, any principle of state law that would give us a cause of action against a governmental entity for... But it's your burden to show irreparable harm, right? And I'm not even sure I saw any analysis in your briefing. You talked about how it would be so dispersed among the employees it would be difficult. But I didn't even see really a discussion of your analysis of why you couldn't try to sue the court. Well, because no state law creates a cause of action for a suit against a governmental entity for expenses incurred in complying with a statute that's later found to be invalid. So, I mean, that's all the argument that there is, is to point out that there is no legal principle that would allow us to recover that. And again, I think that's common ground in this case. And if the court feels otherwise, they can say so. But so that's the irreparable harm. There is also, I would add, the further irreparable harm in the renegotiation of contracts under collective bargaining agreements that would be required. On that one, though, I didn't understand why you couldn't just have a clause in the collective bargaining agreements you're negotiating that says this is only good unless and until this decision in this case comes out differently. I mean, couldn't you just have, I mean, you're saying this is impossible, but it's not impossible. You could have these wages with a clause that says we are litigating this issue. And if we don't have to give you this higher wage, then this will end and we have to renegotiate or something. I mean, we could ask for such a clause, but if it's not agreed to, like we are legally obligated, once the rules go into effect, the paying the higher wages is not something we can negotiate over. It's something that we're legally obligated to pay. But this is really speculative. I'm just not sure you've shown that you have this likelihood of irreparable harm in this speculative thing about the next negotiation that you haven't even had yet that means that you need an injunction right now in this case. Well, I mean, as I said, as a practical matter, it's not going to be possible to recover the excess wages paid out to thousands of employees. And I think sticking with the collective bargaining agreement point for a moment, it's really not speculative to say that if the law goes into effect, we will have a legal obligation to pay out higher wages that will have to be reflected in any collective bargaining agreement that's negotiated. And we do not have a right under the NLRA or the Railway Labor Act simply to unilaterally reduce wages once there's been a change in state law. Do you want to save a few minutes? Can I ask you questions? Oh, sure, of course. Thank you. First, say we agree with you on the state law question. This follows up the Q&A you've just been having. How would our remand instruction read? Remand for entry of final judgment, remand for reweighing other preliminary injunction factors? How would you write it? It is our position that the district court abused its discretion in weighing the other preliminary injunction factors. So if you agree with us on everything. Well, let's say I agree with you on the state law question. If you agree with us only on the state law question, then you should remand for reweighing of the factors in light of that holding. Shift gears for a second. Can the port take actions through its lease negotiation powers that it could not take by amending the general rules and regulations? As a matter of state law, yes, it can. And if the port had tried to impose this as a condition of the leases, I think our challenge to it would be much, much more difficult. But, of course, if they tried to impose it as a condition of leases, they would have to do that in the context of a lease negotiation. And other terms of the lease would be bargained for. And that's quite different from a unilateral imposition of the term after the fact. Thank you. Thank you. Thank you. Good morning, Your Honors. Paul Loris for the Port of Seattle. Let me first address your BF food question because I don't believe that the decision of the Supreme Court will actually answer the precise question that is presented here. Certainly, if the Supreme Court holds that the city of Sea-Tac has jurisdiction over the Port of Seattle, then that decides, basically moots this whole question because then the rules and regulations go out the door under the way they've been adapted. But what's not before the state Supreme Court is the question in terms of authority presented here, that is whether the Port of Seattle to pursue safety and security concerns under the revised Airport Act allows them as a means to do so to adopt the regulations that they have to reduce employee turnover and to improve training with the purpose of improving safety and security. That issue is not going to be addressed by the Washington Supreme Court. Is there any reason for us not to wait and see? Well, the only reason not to wait and see is the possibility that this whole issue can be mooted if the city of Sea-Tac is allowed to impose its police power on the Port of Seattle. I guess the question then becomes the concern that they've raised that there'll be a 45-day period between that decision and the implementation of the regulations by the Port of Seattle. That's probably a sufficient time to address whatever issues remain if this is not mooted. If it's mooted, then the whole case goes away. So conceivably, that is true.  But the concerns that we hear about the lack of showing a reputable injury indicate that there's no reason to overturn district court in this case and to allow... What are they going to go after to recover the excess wages if they end up prevailing in the event that a preliminary injunction isn't issued? Well, I think, Your Honor, first of all, there'll be a period of time, 45 days, to implement. I think that the airlines and sophisticated parties, they can figure out how to address whatever labor issues they have in order to protect themselves. And I, admittedly, I have not looked at, and I'm not going to do the research for the plaintiffs as to whether or not they can sue the Port of Seattle to try to recover that. There may or may not be some theory, but I'm not going to... I don't know the answer to that question at this point. So that is their burden, as has been pointed out. I think it's... Can we just point out how this might work? So they want an injunction now. It's a preliminary injunction, right, that they're seeking? Yes, it's preliminary. So they want a preliminary injunction. It's been denied. If we affirm that and we do it right out... Say the Washington Supreme Court does not moot the issue, and so then we decide something the next day. You'll have 44 days left. Would there be time to litigate all the merits to figure out whether... I mean, could this just be resolved in that time, or is that impossible? As I understand it, you know, the parties are preparing to... are in the process of exchanging documents. We're preparing to do depositions, to go to the questions, for example, of the impact of the regulations on prices, routes, and services. So there is discovery that would be... that is planned to happen this summer. I think that would be productive to be completed in order to meet a deadline if we had a 45-day deadline. So you're moving forward. You're moving forward and you have a discovery cutoff date? Yes, we do, Your Honor. What is that discovery cutoff date? It's 120 days before February 28th. So that's, I think, the end of October, if I am remembering correctly. So there is a discovery cutoff date, and I do think we would all benefit by moving this case forward so that if the case is not mooted by the state Supreme Court, then we can proceed to have this case tried and adjudicated in a timely fashion without having to rush it all within 45 days. I'm going to the merits. I think that, you know, what the cases that the... I'm sorry to do this to you. You've hardly gotten out of the blocks and we've... I'd rather answer questions than... I appreciate that. And I don't need an explanation to these next several questions. I just would like a yes or a no. Do you only contend that the port acted in a governmental capacity when it adopted the wage rule? I would like to explain. The literal answer is no, but principally yes. Spoken like a true lawyer. No, but the revised Airport Act, I think, which is if you look at what the port's resolution is, they cite the revised Airport Act, and they also cite their powers under the Port Districts Act. I think the revised Airport Act under the Branson case and the way the revised Airport Act is drafted is a governmental capacity action. The Port District statute that gives ports the right to control their businesses, that's a proprietary. So I'm sorry to not give you a simple yes or no, but principally the answer is yes under the governmental powers granted under the revised Airport Act. Do you contend that the port has expressed statutory authority to adopt the wage rule? Yes or no? No, and it's not at issue in this case. OK. Do you contend that power to adopt the wage rule is essential to the purpose of an airport? Yes or no? Well, in terms... There are many modes that can be utilized to secure safety and security, and under the Branson court, that decision and discretion is left to the airport's operator to decide the modes and means of carrying out the powers that are granted to it under the revised Airport Act. So the answer is it is within the power of a airport operator to use this type of resolution in order to secure safety and security. Has it become too attenuated, and if so, at what point? I don't think it becomes too... Well, first of all, there can't be any arbitrary action by the port. We aren't arguing that we have unlimited arbitrary action. What we have here is a six-month study by the port that looked at conditions at the airport, that looked at conditions at other airports, how other airports have addressed issues related to safety and security, particularly the San Francisco airport, which has a quality standards program, which this is based on. It's looked at academic studies about the effectiveness of those programs. So in the context of the record here... How does the enactment of a wage regulation relate to use of a property? It relates to whether this is a safe and secure property for the users of the property, that is, the people who are traveling on air traffic, the people who are working there. I mean, if there's a security problem at the airport, Sea-Tac airport, that has a major impact on the people who are using it and probably on broader economies. But if you read it that broadly, then what sort of actions would not be related to the use of the property at the airport? Well, I mean, there are probably a million that would not be related to the use of the airport. We're only asking for one. A few examples, if you can come up with it. I'm trying to figure out where the limits are. So if enacting wage regulations for third-party employees, baggage handlers, ramp operators and the like, if your position is that that relates to safety, it relates to our management control of property at the airport, what type of actions would not be related to the operation of the airport? Arrest regulation, that people have to wear smiley face buttons. I mean, there are a lot of things that could be related to... Things that realistically could happen in real life in terms of the operation of the airport. Well, maybe in Seattle would be unrealistic for people to have to wear smiley face buttons, but they did originate in Seattle. So, yeah, I think the question really is more fairly whether or not this particular rule and regulation has been shown to have some relationship to safety and security. The idea that increasing wages and benefits, increasing training leads to lower turnover is not something that's new and unique in this area. It happens to have been studied with respect to the San Francisco experience by UC Berkeley, and there has been found to be a direct connection between increasing wages and benefits and training to lowering turnover, which in turn has benefits in terms of lowering the number of security violations that occur at the airport. Is there any Washington case that talks about what deference we need to give to that explanation? I mean, do we just have to take it at face value and say, they're saying it's about safety, so we have to believe them? Is there any Washington case that can guide us in this? I think Branson does guide us in this, because what Branson says is, and this is specifically dealing with the revised airport acts, Branson says, look, if the goal of what the airport operator is trying to do is permitted under the airport act, we will not, we the court, will not second guess the means or the modes of the airport operator to achieve that goal. And here, again, I think you have to focus on the goal here of safety and security, which no one has argued is outside the power of an airport operator under the revised airport act to address. And so this is a means that's supported by a record that Judge Kuhnhauer looked at and ruled as a matter, determined as a matter of fact was sufficient to support the effort to achieve safety and security. And that finding by the judge is entitled to a degree of deference. It can be only overturned by this court if it's clearly erroneous. But given the Branson court's statement that the modes and methods in which an airport operator achieves a legitimate goal under the airport act is something we are not gonna second guess, something we the court should not look into. And particularly here, where there is a sufficient record to demonstrate a connection between improving wages, improving training, and lowering turnover, and therefore lowering the number of security violations by people who work at the airport. What do I do with the November 2011 port staff memo noting airports in other states that had adopted labor harmony plans were led by, and I quote, governing bodies that had general purpose government powers, allowing them to articulate policies related to living wages and other social policies. These are powers that the port of Seattle does not have. End quote. What changed? Well, I think there are a couple of things that have changed. First of all, this is not an effort by the port to exercise a general police power to address wages generally. This is an effort by the port to address security in a particular area of the airport, the most secure area of the airport. It addresses only, I think, 25% of the workforce at the airport, and it's specifically directed at something that is within the power of the port as an operator of the airport to address, which is safety and security. We're not asking this court to affirm a general police power right to adopt all wage regulations anywhere on the airport. So does 25% significant? Is there another percentage that would lead me to a different conclusion? Well, I think it's a matter of putting into context. I think the key significance is, is this oriented towards safety and security by applying to the most secure areas of the airport? I think it clearly is. So the goal here is to increase safety and security, which is a legitimate goal under the Revised Airport Act, is a legitimate goal that we would want all airport operators to be trying to achieve. So whether it's 20% or 30%, that's not determinative. The point being is that it's not an overall effort  It's an effort to deal with security and safety that has an impact on a discreet set of employees who work at the airport. I'm gonna ask you, and try again, to see if you can give me an example of a port action that would exceed the port's state law authority to adopt needed rules to govern the use of the property. Can you give me any that, and I don't want action that would violate a state or federal law. Can you give an example as? Well, I mean. Forget the smiley face. I'll forget, I guess I'll start by pointing to a case that was decided by the Washington Supreme Court, and that was an effort by the Port of Seattle to adopt an airporter service, that is to take people from the airport to points outside of the airport properties. The state Supreme Court said, no, you can't do that. That's not within your powers. You have the powers implicit, implied under the Airport Act to arrange for people to take passengers off-site, but you don't have the power of port to actually go off-site yourself and run an airporter. So there are limitations. Could you require food vendors to post calorie counts? Well, certainly not under a safety and security rationale. I think you'd have to have a different rationale. I think that is something that probably is more appropriately negotiated as a matter of a lease tenant. I know that, for example, the Port of Seattle does negotiate with its food tenants to require that they provide the same pricing at the airport that they do off-airport. So I think that's how the Port of Seattle has addressed that type of issue in the past and how they would be able to address it in the future. Say again what the safety and security rationale is for increased wages? Well, it's set forth in the presentation that was made to the Port of Seattle in June. And basically the findings that the staff found that's also supported by the findings of the Berkeley study of San Francisco is that the highest percentage, more than 50% greater, violations of security breaches at the airport were committed by people within the first year of their employment. And so as people are more senior, as they stay longer, then... It's a retention issue to try to get experienced people to stay on by paying them more. Exactly. It's a retention issue. You want to avoid turnover, especially in that first year. There are also training aspects to the regulations that would increase the ability of employees to respond to emergencies and make sure they understand what's going on. But it's principally from part of it is the retention aspect of it. And would that be your same answer under CHEM I on why it's a legal necessity for the port to set a minimum wage? Well, first of all, I don't think that CHEM I is really dispositive of this. CHEM I and the other cases that they're relying on are looking at the port district statute. They're not looking at the revised airport act. And clearly the revised airport act is granting a much broader amount of power to the airport operator. It applies not just to a port district that operates in an airport, but also to cities and counties. For example, in Spokane, the international airport there is run by the city and the county of Spokane. And they are restricted or given whatever powers they have to do that through the revised airport act. So I think that the CHEM Bank cases and the other cases they're citing about the limited power of port districts really don't apply squarely when you're exercising power in the revised airport act. Great. Thank you very much. Thank you, Your Honor. Thank you. I have just two observations about the limits of the port's authority. And the first is my friend gave the example of operating an airport bus service. And it is true that there is a state Supreme Court decision that says that the port lacks authority to do that. Under the reasoning that the port is advancing here, that decision really should have come out the other way. One could very easily argue, and a legislative body could rationally find, that having more people come to the airport in buses driven by professional drivers and fewer people driving their own cars would enhance safety on the roads in and leading to the airport. But that sort of attenuated chain of reasoning doesn't make that regulation a regulation of the use and government of airport property. The second and related point is the Branson case that came up earlier. Branson involved setting concession fees for taxi operators. And there was an express statutory grant of authority to set concession fees. And the question was whether the port was allowed to set the fee as a percentage of gross receipts. And it was in that context that the court said, when there is a power, the port has authority to select the mode and means by which the power will be exercised. But the very fact that it took several paragraphs of discussion to establish that the port had authority to do what seems like a fairly obvious step carrying out an express grant of authority just shows how far beyond anything Washington courts have recognized the port's action here is. There are no further questions. We ask that the- What do you think of the DILT decision from the nine, sir? We have argued that DILT applies to forgiving a standard in its review of generally applicable regulations. But even accepting DILT's, this is not a generally applicable regulation. That was a point emphasized repeatedly in DILT's that you had a rule there applied to every industry in the state. And when you have something that specifically targets airlines, if you had a law that said, you know, the fare for San Francisco to Seattle has to be 10 cents lower than it is, that would clearly be preempted even though it's a very minimal effect. So too, when you have a special labor standard just for those who are providing airline services, in that context, you don't have to show a significant effect as in DILT's. One can infer the effect and the direct targeting is sufficient to establish that the law is related to airline services. So a judge in the DILT's case could in this case find there is preemption and be consistent? Absolutely, your honor. Thank you. Any questions? All right, thank you very much for your arguments on both sides. They were both very helpful. The matter is submitted for.
judges: Zouhary, Nguyen, Friedland